UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST C. FLENTALL,

                    Plaintiff,                          Civil Action No. 10-cv-13353

            v.                                District Judge Avern Cohn
                                            Magistrate Judge Laurie J. Michelson
MOREY, et al.,

                    Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS
MOREY, HOLDEN-SELBY, AND WILLIAMS' SECOND MOTION TO DISMISS [21]
AND TO GRANT DEFENDANT SALINAS' MOTION TO DISMISS [28]**

Plaintiff Ernest C. Flentall ("Plaintiff"), a Michigan Department of Corrections ("MDOC") inmate proceeding *pro se*, brought this case pursuant to 42 U.S.C. § 1983 alleging that correctional officers Timothy Morey, Kelly Holden-Selby, and Christine Williams ("Officer Defendants") violated his constitutional rights by taking his legal brief and placing him in segregation on false misconduct charges in retaliation for filing a prior grievance against officer Morey. Plaintiff also asserts that Defendant Joel Salinas, an MDOC hearings investigator, violated his constitutional rights by inadequately investigating the misconduct charges against Plaintiff. All pretrial matters have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkts. 7, 18.) Presently before the Court are the Officer Defendants' Second Motion to Dismiss (Dkt. 21) (a renewed motion in response to Plaintiff's Amended Complaint) and Defendant Salinas' Motion to Dismiss, which "incorporates by reference the statements made in the [Officer Defendants'] Second Motion," (Dkt. 28).

For the following reasons, this Court recommends GRANTING Defendants' Second Motion

to Dismiss (Dkt. 21) and DISMISSING Plaintiff's Complaint WITHOUT PREJUDICE as to Defendants Morey, Holden-Selby, and Williams. The Court also recommends DISMISSING Defendant Salinas WITH PREJUDICE because Plaintiff has failed to state a claim against Salinas upon which relief may be granted – but for reasons other than those argued by Salinas.

## I. BACKGROUND

### A. Facts

Plaintiff asserts that on November 17, 2009, while he was incarcerated at the Robert G. Cotton Correctional Facility, Defendant Morey called Plaintiff a "nigger," and he therefore filed a prison grievance against Morey. (Dkt. 20, Am. Compl. ¶¶ 6, 9.) According to Plaintiff, three days later, on November 20, 2009, the Officer Defendants retaliated against him for filing that grievance by taking his legal brief, filing false misconduct charges against Plaintiff, and placing him in segregation. (*See* Am. Compl. ¶ 9.) Plaintiff further asserts that Defendant Salinas joined the Officer Defendants' retaliatory conduct by failing to act as an "impartial and unbiased fact-finder" during the investigation into the misconduct charges. (Am. Compl. ¶ 11.) More specifically, Plaintiff asserts that the following events — assumed true only for purposes of the present Rule 12(b)(6) motions — demonstrate that Defendants violated his constitutional rights.

On the morning of November 20, 2009, a prison medication line ("med-line") call was announced for Plaintiff's housing unit. (Am. Compl. ¶ 1.) As Plaintiff "headed out the door," Defendant Holden said "something" to Plaintiff which Plaintiff could not understand, and, as such, Plaintiff continued to his scheduled med-line appointment. (*Id.*) It turned out that Holden had ordered Plaintiff to untuck his shirt collar. (Am. Compl. ¶ 2.)

Upon returning to his housing unit, Defendant Morey instructed Plaintiff to empty his

pockets. (Am. Compl. ¶ 2.) Plaintiff asserts that he had possession of his prison identification card ("ID") at the time because he had just been to the med-line where prisoners are required to show that ID to receive medication. (*Id.*) When Plaintiff emptied his pockets, however, Holden allegedly took and hid the ID, and then pretended that it was missing. (*Id.*) Holden then had Morey search Plaintiff's cell for the ID card. (*Id.*)

Soon thereafter, Holden called a yard officer to the housing unit and the officer searched Plaintiff and took him to segregation. (Am. Compl. ¶ 3.) At that point, an "emergency-count sounded" requiring Plaintiff to stay in segregation until the count was clear. (*Id.*)

Upon returning to his cell, Plaintiff noticed that the locks on his two lockers had been changed. (Am. Compl. ¶ 5.) Plaintiff asserts that Morey switched the locks. (*Id.*) He asked Defendant Williams to unlock them, which she did. (*Id.*) Upon inspection, Plaintiff could not find his legal brief. (*Id.*) Plaintiff believed that Morey had taken the brief, and asked Williams to log the alleged misconduct and to "get the shift commander." (Am. Compl. ¶ 6.) Williams allegedly responded, "I can't do that, I'll get in trouble." (*Id.*) Williams then spoke with Holden who said that Plaintiff should file a grievance and "get away from the desk." (*Id.*) "Plaintiff then informed Williams that the shakedown and theft of his legal brief was in retaliation for his having filed a grievance against Morey." (*Id.*)

As Plaintiff headed back to his cell, he noticed Morey at the desk, so he asked Morey to log the missing brief or call the shift commander. (Am. Compl. ¶ 7.) Plaintiff asserted that he would leave the desk after Morey performed the requested actions. (*Id.*) Morey told Plaintiff that he needed to calm down, and Plaintiff replied that he was calm, and stated, "I just need you to return my brief so I can file it in court, next week!" (*Id.*) Plaintiff alleges that Morey then stated, "F**K

3

YOU!!!, and get away from my desk!"  (*Id.*)

Plaintiff then returned to his cell to get a binder that previously held the brief to show Morey that the brief was missing.  (Am. Compl. ¶ 8.)  At that point, Morey called a yard officer and instructed the officer to handcuff Plaintiff and take him to segregation.  (*Id.*)

Shortly following the incident, Morey filed a Major Misconduct Report, accusing Plaintiff "of two major rule infractions, Threatening Behavior and Creating a Disturbance."  (Am. Compl. ¶ 10.)[1]  That report provides that Flentall pointed his finger and shouted at Morey for taking his brief, and when asked to calm down, yelled "f**k no I won't calm down.  You get my brief now! Did you hear me?" (Dkt. 1 at ECF 23.)[2]  The report also states that Flentall's conduct made a scene drawing a large number of prisoners out of their cells to watch, and that Flentall went back to his room, grabbed the binder, and then continued to yell.  (*Id.*)  An administrative hearing on the misconduct charges levied against Plaintiff was set for December 2, 2009.

In the interim, a hearings investigator, Defendant Joel Salinas, took statements from Morey, Holden-Selby, Williams, and Plaintiff.  (Dkt. 1 at ECF 25, 29, 30, 44.)  On the written account of Plaintiff's statement, Salinas noted, "Witnesses: [prisoner] G-20, camera, log book on brief, officer F. Anderson."  (Dkt. 1 at ECF 44.)  He found, however, that there was no relevant video of the

---

[1]Defendant Holden also filed a Major Misconduct Report for "Disobeying a Direct Order & Out of Place."  (Dkts. 15, 26, Pl.'s Resp. to Defs.' 2d Mot. Dismiss at ECF 14.)

[2]Plaintiff did not reattach the exhibits from his original Complaint to his Amended Complaint.  These documents consist of grievance forms and papers related to the misconduct charges brought against Plaintiff.  The omission appears to be unintentional.  In fact, Plaintiff attached many of the same documents to his response to Defendants' first Motion to Dismiss (Dkt. 15) and has asked the Court to treat that response as his response to Defendant's Second Motion to Dismiss.  (Dkt. 26.)  Accordingly, the Court will treat the attachments to the original Complaint as attached to Plaintiff's Amended Complaint.

4

November 20th incident because prison cameras were not focused on the officer's desk during the relevant time period. (Dkt. 1 at ECF 31.)  Salinas also decided not to interview yard officer F. Anderson, because, according to Salinas, "all he had done was escort prisoner Flentall out of the unit in restraints."  (*See id.*)  Plaintiff asserts that Salinas breached his duty to act as an impartial and unbiased fact-finder and failed "to fully investigate the accused's version of the events."  (Am. Compl. ¶ 11.)  In so doing, according to Plaintiff, Salinas violated Plaintiff's Due Process and Equal Protection rights, and "obviously joined the conspiracy to retaliate against [P]laintiff for filing the grievance against Morey."  (*Id.*)

From November 20, 2009, through Plaintiff's misconduct hearing, and thereafter until December 8, 2009, Plaintiff asserts that he was kept in segregation.  (Dkts. 15, 26, Pl.'s Resp. to Def.'s 2d Mot. Dismiss at 4.)

On December 2, 2009, the administrative hearing on Morey's charges against Plaintiff was held.  (Dkt. 1 at ECF 24.)  The hearing officer found Plaintiff guilty of misconduct because Plaintiff had responded inappropriately to Morey's conduct.  (*Id.*)  Plaintiff sought a rehearing which was denied; he then filed a petition for judicial review in state circuit court.  (Dkt. 1 at ECF 19-22, 32-37, 41. )  That court found that Plaintiff was not entitled to the full process accorded in a criminal prosecution, that the hearing officer's decision was "supported by competent, material and substantial evidence on the whole record," and that Plaintiff's case was largely determined on credibility issues which are not revisited on state-court appeal.  (Dkt. 1 at ECF 38-43.)

Plaintiff also filed a grievance, JCF 10-01-00209-028e ("JCF 0290"), against Defendants Holden, Morey, and Williams.  The timing of Plaintiff's filing is the crux of the Officer Defendants' Motion and the relevant facts will be discussed in more detail below.  The content of the grievance

5

is largely the same as the allegations in the Amended Complaint — Plaintiff recounts his version of the November 20, 2009 events and asserts that the Officer Defendants retaliated against Plaintiff because he had filed a grievance against Morey.  (Dkt. 1 at ECF 10-11.)

### B.  Procedural History

Plaintiff filed this suit on August 24, 2010.  (Dkt. 1.)  On September 29, 2010, Plaintiff filed a letter request with the Court asking for permission to amend his Complaint.  (Dkt. 13.)  Treating that request as a motion, on April 19, 2011 this Court allowed Plaintiff to perfect his "motion" by filing a copy of the Amended Complaint, which had already been served on Defendants, with the Court.  (Dkt. 19.)  Plaintiff did so (Dkt. 20), and on May 20, 2011 the Officer Defendants responded by filing a Second Motion to Dismiss (Dkt. 21).  Per Plaintiff's May 23, 2011 request (Dkt. 26), the Court will treat Plaintiff's Response to the Officer Defendants' first Motion to Dismiss (Dkt. 15) as his Response to their Second Motion to Dismiss.  On May 31, 2011, Defendant Salinas waived service and filed a Motion to Dismiss based on the arguments presented in the Officer Defendants' Second Motion to Dismiss.  (Dkt. 28.)  On June 17, 2011, Plaintiff filed a Response to Defendant Salinas' motion.  (Dkt. 31.)

## II. ANALYSIS

### A.  Legal Standards

Under Fed. R. Civ. P. 12(b)(6), a case warrants dismissal if it fails "to state a claim upon which relief can be granted."  When deciding a motion under Rule12(b)(6), "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true," and determine whether the plaintiff has alleged "enough factual matter" to "state a claim to relief that is plausible on its face."  *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability," it has failed to show that relief is plausible as opposed to a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted). In applying this rule to *pro se* plaintiffs, the Court is mindful that allegations in the complaint are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### B. The Officer Defendants Should Be Dismissed Because Plaintiff's Grievance Was Not Timely Filed And Is Therefore Unexhausted

The Officer Defendants assert that the grievance forming the basis for this suit is unexhausted because Plaintiff failed to comply with the time-to-file provisions of the applicable prison grievance procedure. (Def.'s 2d Mot. Dismiss at 5-7.) This Court agrees.

#### 1. Legal Standards Governing Exhaustion Under the Prisoner Litigation Reform Act

The failure to exhaust is an affirmative defense to a civil suit brought by a prisoner. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The Prisoner Litigation Reform Act ("PLRA") bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones*, 549 U.S. at 918-19. The exhaustion prerequisite applies to all inmate suits about prison life — regardless of the nature of the wrong or the type of relief sought. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (rejecting claim that prisoner had no duty to exhaust where monetary damages could not be awarded through the administrative process; reasoning that "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."). Moreover, a prisoner must "properly" exhaust his claims, which requires "'complet[ing] the administrative review process in accordance with the applicable

7

procedural rules'— rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

Although the Supreme Court in *Jones* held that exhaustion is an affirmative defense, it did not categorically preclude the possibility that a complaint may be dismissed on exhaustion grounds pursuant to Rule 12(b)(6) — the procedural posture  Defendants invoke here.  Rather, the Court suggested that, similar to a motion to dismiss on statute of limitations grounds, if the allegations in the complaint make plain that a plaintiff is not entitled to relief because he failed to exhaust, dismissal pursuant to Rule 12(b)(6) may still be appropriate.  *Jones*, 549 U.S. at 215; *see also Feathers v. McFaul*, 274 F. App'x 467, 469 (6th Cir. 2008) ("[I]t remains possible [after *Jones*] for failure to exhaust to be a basis for dismissal under Fed. R. Civ. P. 12(b)(6)."); *Doe v. Dublin City School Dist.*, No. 2:09-cv-738, 2010 WL 1434318, at *5 (S.D. Ohio Apr. 8, 2010) ("Plaintiffs err in their reading of *Jones*.  The Supreme Court did not hold that a defendant cannot raise a failure to exhaust in a Rule 12(b)(6) motion . . . . *Jones* held only that exhaustion need not be pled and that the burden of demonstrating a failure to exhaust is on a defendant."); *but see Werdlow v. Caruso*, No. 09-11009, 2009 WL 4948490, at *6 (E.D. Mich. Dec. 14, 2009) (explaining, where both plaintiff and defendants attached grievances to their motions, that "[s]ince exhaustion is an affirmative defense Plaintiff is not required to plead exhaustion in his Complaint. . . .  Therefore, failure to exhaust administrative remedies is not a proper ground for dismissal under Rule 12(b)(6).").[3]

---

[3]Courts in this district have continued to *sua sponte* dismiss prisoner suits as unexhausted pursuant to 42 U.S.C. § 1997e(a), which allows a court to dismiss a prisoner complaint that "fails to state a claim upon which relief can be granted."  *Newson v. Steele*, No. 09-10346, 2010 WL 3123295, at *4 n.3 ("In *Jones v. Bock* . . . while the Supreme Court held that failure to exhaust is an affirmative defense, the Court also pointed out that prisoner complaints may still be subject to *sua*

In this case, while Plaintiff's failure to exhaust is not plain based solely on the allegations in his Amended Complaint, it is plain based on the Amended Complaint as a whole. In particular, Plaintiff has attached the relevant grievance forms to his original Complaint, and, as noted, the Court considers them part of his Amended Complaint. *See Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) ("'In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'" (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990))); *Trofatter v. Caruso*, No. 1:08-cv-1018, 2010 WL 6121685, at *4 (W.D. Mich. Dec. 20, 2010) *reported adopted by* 2011 WL 901912 (W.D. Mich. Mar. 15, 2011) ("This court may take judicial notice of plaintiff's grievance filings . . . for purposes of deciding a motion to dismiss."). Thus, the Court finds that converting the present motion into one under Rule 56 is unnecessary.

In any event, even if Rule 56 standards govern, Plaintiff has had an opportunity to attach all relevant documents to his original Complaint, his Response to Defendants' Motion, and/or his Amended Complaint, and, for reasons that will be made clear below, the Court finds no genuine issue of material fact precludes an exhaustion defense. *See Cook v. Caruso*, No. 09-10892, 2011 WL 768112, at *2 (E.D. Mich. Jan. 25, 2011) *report adopted by* 2011 WL 768076 (E.D. Mich. Feb.

---

*sponte* dismissal for failure to exhaust administrative remedies."); *Spaulding v. Oakland Co. Jail Med. Staff*, No. 4:07-cv-12727, 2007 WL 2336216, at *3 (E.D. Mich. 2007) ("Where it is clear from the face of the complaint that a plaintiff failed to properly exhaust his administrative remedies in accordance with the applicable grievance policy, the plaintiff's complaint is subject to *sua sponte* dismissal for failure to state a claim pursuant to *Jones v. Bock*."); *Annabel v. Gendernalik*, No. 08-15329-BC, 2009 WL 2139954, at *2-3 (E.D. Mich. July 13, 2009) ("The [Supreme] Court [in *Jones*] was quick to point out, however, that [although exhaustion is an affirmative defense, that] does not mean that prisoner complaints will never be subject to *sua sponte* dismissal for failure to exhaust administrative remedies").

28, 2011) ("[W]hether categorized as a 12(b)(6) motion or otherwise, the underlying question in this motion is whether the Defendants have carried their burden of showing that the Plaintiff failed to exhaust his administrative remedies. If they have, then the unexhausted claims must be dismissed without prejudice.").

### 2.   *JCF 0209 Is Unexhausted Because It Was Not Timely Filed*

The Step I grievance form for the JCF 0209 grievance provides that Plaintiff attempted to resolve his problem with Defendants Morey and Holden on November 20, 2009.  (Dkt. 1 at ECF at 10-11.)  The "Today's Date" box on the form — which indicates the date Plaintiff completed the form — contains the date November 21, 2009.  (Dkt. 1 at ECF 10.)  JCF did not receive the completed Step I grievance form until later, however.  The form appears to have been first routed to the Grievance & Appeals Section, which stamped the form with a "RECEIVED - MDOC Grievance & Appeals" date of December 15, 2009.  (Dkt 1 at ECF 17.)  JCF then received the Step I form on January 20, 2010: this is the date provided in the "Date Received at Step I" box on the form.  (*Id.*)  That same day, an "L. McMillan," presumably the Grievance Coordinator at JCF, rejected Plaintiff's Step I form as untimely.  (*Id.*)  Specifically, McMillan stated, "Rejected untimely per [Policy Directive] 03 02 130 page 2 section G # 4 and page 3 section P."  (*Id.*)

Policy Directive 03.02.130 (effective July 9, 2007) ("Policy Directive") sets forth MDOC's procedures for filing and appealing grievances.   MDOC Policy Directives, http://www.michigan.gov/ corrections/0,1607,7-119-1441_44369---,00.html (last visited May 24, 2011).[4]  As cited by McMillan in Plaintiff's Step I response, the Policy Directive provides that prior

---

[4]"The MDOC's policy directives are a proper subject of judicial notice under Fed. R. Evid. 201(b). . . . As such, the court may consider it without converting the 12(b)(6) motion into a motion for summary judgment." *Vartinelli v. Pramstaller*, No. 10-10702, 2010 WL 5330487, at *4 n.4 (E.D.

to filing a grievance, an inmate must attempt to resolve the problem orally with the person-to-be-grieved "within two business days after becoming aware of a grievable issue." *Id.* ¶ P. "If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff." *Id.* McMillan also cited Paragraph G of the Policy Directive, which provides: "A grievance . . . may be rejected for any of the following reasons: The grievance is filed in an untimely manner. The grievance shall not be rejected if there is a valid reason for the delay; e.g., transfer." *Id.* ¶ G4.[5]

Plaintiff attempted to resolve his problem with Defendants Morey and Holden on Sunday, November 20, 2009. (Dkt 1 at ECF 10, 17.) He thus had through Friday, November 25, 2009 to "file" his Step I grievance form. Policy Directive ¶ P. The Policy Directive provides that "Grievances . . . shall be considered *filed* on the date *sent* by the grievant." *Id.* ¶ S (emphases added); *see also id.* ¶ V ("Within five business days after attempting to resolve a grievable issue with staff, a grievant may *send* a completed Prisoner/Parolee Grievance (CSJ-247A) to the Step I Grievance Coordinator designated for the facility, field office, or other office being grieved . . . ." (emphasis added)). But Plaintiff concedes that he did not "prepare[] and mail" the Step I grievance form until after he was transferred to another facility on December 8, 2009. (Pl.'s Resp. at 4.)[6] And,

---

Mich. Dec. 1, 2010) *objections to report overruled by* 2010 WL 5330484 (E.D. Mich. Dec. 21, 2010) (citing *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir.2002)).

[5]Due to a typo in the copy of the Policy Directive accessible to the Court, this fourth subparagraph is actually numbered "3." It is apparent that McMillan was citing to the quoted language, however.

[6]That Plaintiff did not mail his Step I form until after his transfer from JCF on December 8, 2009 is consistent with the fact that (1) the Grievance & Appeals Section — instead of JCF directly — was the first to receive the submitted grievance, and (2) the Grievance & Appeals Section did not receive the form until December 15, 2009.

although the Policy Directive provides that a transfer "is a valid reason for the delay," this does not account for Plaintiff failing to file the grievance *prior* to his transfer — i.e., sometime between November 20, 2009 and December 8, 2009.  Accordingly, the grievance was untimely.

It is well-settled that a failure to timely grieve an issue, even if ultimately appealed through Step III, does not constitute exhaustion.  *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (holding that exhaustion means "proper exhaustion," and explaining that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."); *Hagopian v. Smith*, No. 05-74025, 2010 WL 3854562, at *3 (E.D. Mich. Sept. 28, 2010) ("An untimely grievance does not satisfy § 1997e(a)'s exhaustion requirement."); *Cook*, 2011 WL 768112, at *3 ("*Ngo* clearly holds that filing an untimely or otherwise procedurally defective grievance does not satisfy the PLRA's exhaustion requirement.").[7]

_____

[7]An exception to this rule may exist where the prison or MDOC responds to the grievance on the merits instead of enforcing the procedural bar of timeliness.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) ("When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we.").  Such an exception is inapplicable here, however, because at Step II, the JCF Warden upheld the Step I response on timeliness grounds:

> The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.  You state that the date of incident 11/20/09 and you state that you attempted to resolve the issue on 11/20/09 and Today's date 11/21/09.  You have not presented any new information to change the Step I response or any valid reason for the delay in filing the grievance.  You did not leave JCF until 12/8/09 but did not sen[d] the grievance to JCF until 1/20/10 and do not provide a reason [for] the delay in submitting the grievance.

(Dkt. 1 at ECF 13.)  And at Step III, the Grievance and Appeals Section in Lansing rejected Plaintiff's appeal without addressing the merits of his claim:

> The response you received at Steps I and II reflect that your issues were in fact considered and appropriate[ly] rejected at the facility

Plaintiff responds with three reasons why the exhaustion bar is inapplicable to his claim. (Dkt. 15, 26, Pl.'s Resp. to Defs.' 2d Mot. Dismiss at 2-5.) The Court finds none of them preclude dismissal of Plaintiff's Complaint against the Officer Defendants. First, Plaintiff asserts that exhaustion of the JCF 0209 grievance was not necessary in this case because the grievance procedure outlined in the Policy Directive was not available to him. Plaintiff cites paragraph F(2) of the Policy Directive, which provides that "[d]ecisions made in hearings conducted by hearing officers . . . and issues directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing)" are not grievable. *See also* 42 U.S.C. § 1997e(a) (prohibiting suit with respect to prison conditions "until such administrative remedies *as are available* are exhausted." (emphasis added)). He explains that the issues raised in his Complaint are "intertwined" with the major misconduct charges. (Pl.'s Resp. at 2-3.) Because of this allegedly inextricable relationship, Plaintiff asserts that the administrative remedy that was "available" to him was that for challenging the misconduct charges, and that he did in fact exhaust this alternative administrative procedure by requesting a rehearing and appealing to state court. (Pl.'s Resp. at 2-4.)

The court in *Dorch v. Crittenden*, No. 09-13936, 2010 WL 5390175 (E.D. Mich. Dec. 22, 2010) considered and rejected a similar argument. In *Dorch*, the plaintiff alleged that prison officers retaliated against him by issuing "Major Misconduct Reports." *Id.* at * 2. In response to the defendants' exhaustion argument, plaintiff contended that paragraph F(2) rendered his claim non-grievable. In particular, the plaintiff asserted that because the defendants' "'issuance of the misconduct report themselves [*sic*] is inextricably intertwined with and cannot be separated from

---

level. As there is no additional information or basis found for relief at Step III, the Step II decision is upheld.

(Pl.'s Resp. at ECF 47.)

the circumstances that were ultimately the issues to be resolved through the hearing process,' the retaliation claim is nongrievable as it is an 'issue directly related to the hearing process.'" *Id.* at *3. The Court disagreed.  It concluded that the very language of paragraph F(2) presently relied upon by Plaintiff only renders a challenge to the hearing's *process* non-grievable, and that the examples provided in paragraph F(2) did not "comprehend the preliminaries, such as the substance of or motivation behind an investigation that precedes a complaint or the technique used in preparing and presenting an initiating document."  *Id.* at *4.  More specifically, the Court reasoned that the three paragraph F(2) examples

> illustrate that an issue is non-grievable not because it merely relates to some fact that might be raised in the hearing process, but because it *directly* relates to the hearing *process*.  Plaintiff's "issue," while sharing a factual background with the matter considered in the hearing, neither directly relates to the hearing nor relates at all to that hearing's process, unlike such procedural issues as timeliness.

*Id.* at *4.

This persuasive reasoning applies squarely to the facts here. Plaintiff asserts that "Holden[-Selby], Morey and Williams conspired to have [Plaintiff] placed in segregation on bogus charges in retaliation for the grievance he wrote on Morey."  (Am. Compl. ¶ 11.)  But the fact that the Officer Defendants allegedly took Plaintiff's legal brief and then fabricated misconduct charges against Plaintiff are not issues pertaining to the misconduct hearing *process* — rather, they are "preliminaries, such as the substance of or motivation behind an investigation that precedes a complaint."  *Dorch*, 2010 WL 5390175, at *4.  Accordingly, the Court does not find that paragraph F(2) prevented Plaintiff from timely filing a grievance alleging the Officer Defendants' retaliatory

14

conduct.[8]

Next, Plaintiff argues that the grievance process "was not procedurally available as a means of redress" because he went directly to segregation on November 20, 2009, the date of the alleged incident. (Pl.'s Resp. at 4.) He asserts that "[a]lthough grievance forms are 'theoretically' available to prisoners in segregation, in practice they are not. Upon his release from segregation and transfer to a new facility, [Plaintiff] immediately prepared and mailed the grievance to [JCF]." (*Id.*)

Plaintiff's conclusory, unsworn, and unsupported statement is insufficient to alter this Court's exhaustion analysis. Plaintiff concedes as a matter of prison policy that the grievance forms are available to prisoners in segregation. Yet he does not explain why these forms are unavailable "in practice." More importantly, Plaintiff does not allege that the restrictive JCF practices prevented him, personally and in this instance, from filing a grievance while in segregation. Nor does he allege that he requested a Step I form while in segregation but JCF denied his request. *Cf. Argue v. Burnett*, No. 1:08-cv-186, 2011 WL 976413, at *5 (Jan. 18, 2011) *adopted by* 2011 WL 976408 (W.D. Mich. Mar. 16, 2011) ("In his unsworn response to the present motion, Plaintiff asserts that his failure to exhaust his administrative remedies should be excused because the grievance process

---

[8]Nor would the delayed-accrual rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), have prevented a Plaintiff from filing the present § 1983 suit prior to invalidating his misconduct charges. Under *Heck* "a state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Under Michigan law, a prisoner, such as Plaintiff, serving a sentence for offenses after April 1, 1987 either loses disciplinary credits or disciplinary time when found guilty of major misconduct. *See* Mich. Comp. Laws §§ 800.33(1), (3), 800.34(5). The Sixth Circuit has found that the loss of either disciplinary credits or disciplinary time does not necessarily affect the duration of a prison sentence within the meaning of the *Heck* doctrine. *Thomas v. Eby*, 481 F.3d 434, 439-40 (6th Cir. 2007); *Taylor v. Lantagne*, No. 08-1696, 2011 WL 1284359, at * 3 (6th Cir. Apr. 5, 2011).

was 'unavailable.' Plaintiff's arguments in this regard are unpersuasive and, more importantly, are not supported by any evidence."). In fact, Plaintiff's statement is belied by the Step I grievance form itself. (Dkt. 1 at ECF 10.) As noted, the "Today's Date" box on the Step I form, indicating the date Plaintiff completed the form, is November 21, 2009. (*Id.*) But this is during the time Plaintiff asserts he was in segregation and JCF's "practice" made grievance forms unavailable to him. (Pl.'s Resp. at 4.) Accordingly, this Court concludes that Plaintiff's unsupported statement is insufficient to preclude a finding that the JCF 0209 grievance is unexhausted as a matter of law.

Finally, Plaintiff asserts that his failure to timely exhaust should be excused because of his transfer. (Pl.'s Resp. at 4.) But as the JCF warden explained in responding to Plaintiff's Step II appeal, this does not excuse Plaintiff's failure to file a timely grievance between November 20, 2009 (the date of the incident ) and December 8, 2009 (the date of Plaintiff's transfer).

Given that JCF 0209 is unexhausted because it was untimely filed, this Court recommends that Plaintiff's Complaint as against the Officer Defendants be dismissed.

### C. Defendant Salinas Should Be Dismissed Because Plaintiff Fails to State a Claim Against Salinas Upon Which Relief May Be Granted

Defendant Salinas has merely adopted the Officer Defendants' argument as the basis for his Motion to Dismiss. (Dkt. 28, Salinas' Mot. Dismiss at 2.) His brief does not provide very helpful or useful guidance to the Court because it is questionable whether the Officer Defendants' exhaustion argument applies with equal force to Plaintiff's allegations against Defendant Salinas. As discussed above, paragraph F(2) of Policy Directive 03.02.130 provides that "issues directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing)" are not grievable. Plaintiff asserts that Salinas, as the hearings investigator who collected factual information regarding the major misconduct charge levied against

16

Plaintiff, violated his constitutional rights by failing to act as an impartial and unbiased fact-finder and by failing "to fully investigate the accused's version of the events."  (Am. Compl. ¶ 11.)  As Defendant Salinas' conduct occurred after charges were brought against Plaintiff, and his investigation was initiated for the sole purpose of the upcoming misconduct hearing on those charges, Salinas' actions were arguably part of the "hearing process."  *See Dorch*, 2010 WL 5390175, at *4 (noting that the three examples in paragraph F(2) "directly relate to the *process of presenting a hearing designed to investigate* and resolve relevant complaints." (emphases added)).  If so, Salinas' allegedly wrongful acts were not grievable under paragraph F(2), and Salinas would not be able to raise the same exhaustion shield as the Officer Defendants.

Although this Court would have benefitted from briefing on this issue, ultimately the Court need not resolve this question of "statutory" interpretation.  Plaintiff is a prisoner proceeding *in forma pauperis*.  Thus, under either 28 U.S.C. § 1915(e)(2) or § 1915A(b)(1) this Court may dismiss Plaintiff's claims against Defendant Salinas if it determines that his due process allegations fail to state a claim upon which relief can be granted.  Because this narrower, more fact specific ground for dismissal presents itself, the Court recommends dismissal on this ground.

Procedural Due Process claims are examined in two distinct stages. *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002) (citing, *inter alia*, *Bd. of Regents v. Roth*, 408 U.S. 564, 570-71 (1972); *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)).  "First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment.  Only after identifying such a right [does a court] continue to consider whether the deprivation of that interest contravened notions of due process." *Id.*  Although the Due Process Clause provides procedural safeguards where there is a protected property right, the Constitution does not create such

property interests. *Id.* (citing *Cleveland v. Bd. of Educ. of Loudermill*, 470 U.S. 532, 538 (1985)). "Instead, they are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'" *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court found that a prisoner has a protected liberty interest in good-time credits:

> [T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Id.* at 557. But, as noted above, Plaintiff is incarcerated for offenses committed after April 1, 1987. Offender Tracking Information System, http://www.state.mi.us/mdoc/asp/otis2profile.asp? mdocNumber=215401 (last checked June 7, 2011). Under Michigan law, Plaintiff does not qualify for good time credits but instead may earn disciplinary credits or disciplinary time. *See* Mich. Comp. Laws §§ 800.33(1), (3), 800.34(5); *see also LaFountain v. Harry*, No. 1:10-cv-943, 2011 WL 976461, at *6 (W.D. Mich. Mar. 16, 2011) ("In *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007), the Sixth Circuit concluded that the disciplinary credit system that applied to Thomas, who offended after April 1, 1987, was not a good-time program [so as to trigger the *Heck v. Humphrey*'s delayed-accrual rule], because the program would not necessarily — only potentially — affect the length of a prisoner's sentence."). Accordingly, Plaintiff was not deprived of the type of liberty interest at issue in *Wolff. See Nali v. Michigan Dept. of Corrections*, No. 2:10-cv-29, 2011 WL 1598990, at *4-5, (W.D. Mich. Apr. 27, 2011) (holding, where plaintiff alleged that hearings investigator failed

to investigate a misconduct ticket, "[u]nless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails.").

Nor did Plaintiff's misconduct conviction result in a "significant, atypical deprivation." *Id.* at *5 ("Even in the absence of a protectible liberty interest in disciplinary credits, an [MDOC] prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation." (citing *Sandin v. Connor*, 515 U.S. 472 (1995))).  Here, Plaintiff was given 10 days of detention, and 30 days lost privileges.  (Dkt. 1 at ECF 34, Dkt. 15 at ECF 15.)  Courts have found that similar or more severe punishments do not constitute significant, atypical deprivations.  *See e.g.*, *Sandin*, 515 U.S. at 486 ("We hold that [respondent's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."); *Murray v. Unknown Evert*, 84 F. App'x 553, 555 (6th Cir. 2003) ("Under various circumstances, this court has repeatedly found that confinement to administrative segregation does not present an 'atypical and significant' hardship implicating a protected liberty interest. [Plaintiff] has failed to make any allegations that his segregation is 'atypical and significant.'  Consequently, his placement in detention does not give rise to a protected Fourteenth Amendment liberty interest." (citations omitted)); *Hall v. Fuqua*, No. 10-CV-13350, 2010 WL 3768345, at *2 (E.D. Mich. Sept. 21, 2010) ("Plaintiff's claims are frivolous and fail to state a claim because his detention in segregation and loss of privileges for thirty days were not 'atypical and significant hardship[s] on [him] in relation to the ordinary incidents of prison life.'" (quoting *Sandin v. Connor*, 515 U.S. 472 (1995))); *Booth v. Loll*, No. 05-72905, 2008 WL 859413, at *10 (E.D. Mich. Mar. 27, 2008) ("Although plaintiff was found not guilty of the major misconduct, the potential sanctions he would have faced upon a guilty finding are detention, toplock,

19

loss of privileges, assignment of extra duty, and restitution. Whichever of these punishments was imposed, the increase of one's security level does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life." (internal citations omitted)).

Plaintiff's equal protection claim also fails to state a claim upon which relief may be granted. Indeed, Plaintiff has not identified any class of similarly situated prisoners, let alone alleged that the prison has intentionally treated another class of prisoners differently than Plaintiff.

Plaintiff also cursorily asserts that Salinas "obviously joined the conspiracy to retaliate against [Plaintiff] for filing the grievance against Morey." (Am. Compl. ¶ 11.) The facts of the Amended Complaint do not adequately plead First Amendment retaliation by Salinas. To state such a claim, Plaintiff must allege that (1) he "engaged in protected conduct"; (2) Salinas took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) "there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by [Plaintiff's] protected conduct." *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). According to Plaintiff, the Officer Defendants were motivated to retaliate against Plaintiff because Plaintiff had filed a grievance against Morey. But there are no allegations that Salinas even knew about Plaintiff's grievance against Morey and Plaintiff has not otherwise alleged that Salinas had reason to retaliate against him. In fact, Plaintiff's August 2010 grievance against Salinas says nothing about retaliation but instead asserts only violations of due process and equal protection based on Salinas' allegedly inadequate investigation. (Dkt. 31 at ECF 7.) Plaintiff's mere speculation, based on his view of the quality of Salinas' investigation, that Salinas "obviously" conspired with the Officer Defendants to retaliate for a grievance against Morey, does not satisfy pleading requirements. *See Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,

1949 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability," it has failed to show that relief is plausible as opposed to a "sheer possibility that a defendant has acted unlawfully." (internal quotation marks omitted)); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").[9]

Accordingly, the Court finds that Plaintiff has failed to state a claim against Defendant Salinas.

## III. RECOMMENDATION

For the foregoing reasons, the Court should GRANT Defendants' Second Motion to Dismiss (Dkt. 21) and DISMISS Plaintiff's Complaint WITHOUT PREJUDICE as to Defendants Morey, Holden-Selby, and Williams. *See McCloy v. Correction Med. Servs.*, No. 07-13839, 2011 WL

---

[9]Although, as mentioned above, this Court has some doubt about whether Plaintiff could grieve his due process claim against Salinas because Salinas' involvement relates to the misconduct hearing process, it would appear that Plaintiff could have grieved Salinas' allegedly retaliatory conduct. Salinas' motivation for retaliating against Plaintiff is independent of the hearing process. But Plaintiff did not timely grieve Salinas' retaliatory conduct. As discussed with regards to the Officer Defendants, JCF 0290 was untimely. In his Response to Salinas' Motion to Dismiss, Plaintiff provides another grievance, JCF 10-09-02157-028e ("JCF 02157"), which asserts that Salinas violated his procedural due process and equal protection rights. (Dkt. 31 at ECF 7.) But this grievance, which was not completed until August 2010, was also rejected as untimely. (Dkt. 31 at ECF 14-15.) Plaintiff appears to concede that JCF 02157 was untimely filed, but argues that he needed information (e.g., witness statements and the hearing investigator's report) before filing this grievance. (Dkt. 31 at ECF 5.) But this excuse is belied by the attachments to Plaintiff's original Complaint. In particular, in his January 2010 appeal of being found guilty of misconduct, Plaintiff asserts that Salinas performed an inappropriate investigation, lied about camera footage, failed to interview witnesses, and violated his due process rights. (Dkt. 1 at ECF 20.) Accordingly, it does not appear that Plaintiff needed any additional information (beyond what he already had to appeal his misconduct finding) before filing a grievance against Salinas. Accordingly, JCF 02157 is also unexhausted.

1302314, at \*7 (E.D. Mich. Mar. 31, 2011) (rejecting argument that where grievance is rejected as untimely dismissal with prejudice is justified; reasoning that prison may address the merits on a refiled grievance). The Court should also DISMISS Defendant Salinas WITH PREJUDICE because Plaintiff has failed to state a claim against Salinas upon which relief may be granted. *See Hix v. Tenn. Dept. of Corrs.*, 196 F. App'x 350, 354 (6th Cir. 2006) ("[28 U.S.C.] § 1915(e)(2) mandates that a complaint filed by a prisoner proceeding *in forma pauperis* be dismissed with prejudice if it is frivolous or fails to state a claim. . . . When a district court determines that a complaint . . . fails to state a claim, the court lacks discretion under the PLRA to permit the plaintiff to file an amended complaint.").

## IV. FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. A copy of any objections is to be served upon this magistrate judge. E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due

22

within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  August 25, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 25, 2011.

s/J. Johnson
Deputy Clerk